THE PEOPLE OF THE STATE OF NEW YORK EX REL. LAWRENCE FALLON, RESPONDENT, v. THE BOARD OF POLICE COMMISSIONERS OF THE CITY OF NEW YORK, APPELLANT.

THE PEOPLE OF THE STATE OF NEW YORK EX REL. JOHN MOHR, RESPONDENT, v. THE SAME.

*New York police force — trial of a member for a violation of its rules — the board may consider evidence taken before a commissioner whose term of office has ceased — right of the accused to appear by counsel — Constitution, art. 1, sec. 6.*

Where, upon the investigation of charges of improper conduct made against a member of the New York police force, the testimony has been taken by a stenographer before one member of the board of police commissioners, and by him reported to the board for its action, the subsequent determination of the term of office of the commissioner before whom the testimony was taken does not deprive the board of jurisdiction to proceed, and hear and decide the case

210 PEOPLE ex rel. FALLON *v.* POLICE COM'RS.

First Department, December Term, 1883.

upon the testimony so taken, and such other evidence as may be presented to it. It is not necessary that the commissioner before whom the testimony was taken should continue in office and participate in the final decision of the case, to render the action of the board legal.

*People ex rel. Gilhooly* v. *The Police Commissioners* (23 Hun, 351) followed; *People ex rel. Mohr* v. *The Police Commissioners* (27 Hun, 462) explained and not followed.

The right of the party accused to have counsel upon the hearing before the board rests in the discretion of that body. Section 6 of article 1 of the Constitution has no application to proceedings instituted against members of the police force for violating the disciplinary rules of that body.

Appeals from orders of the Special Term in two cases reversing, on *certiorari,* the decision of the police commissioners of the city of New York, removing the respective relators.

*Frank A. Irish* and *S. G. McNary,* for the appellant.

*Douglas A. Levien,* for the respondents.

Davis, P. J. :

These cases come before us upon an order for their reargument. The first of them was argued at the March Term of 1882 ; the second, at the May Term of the same year. The order of the Special Term in the second case was affirmed in June, 1882. The order in the first case was reversed in October, 1882, upon the authority of the *People ex rel. Gilhooly* v. *The Police Commissioners* (decided by this court in December, 1880, and reported in 23 Hun, 351). That decision had the concurrence of all the judges of this court then sitting, as also had the decision of the *People ex rel. Gilhooly,* above cited. In deciding the case of the *People ex rel. Mohr* v. *The Police Commissioners,* it appears by the opinion of the court (27 Hun, 462) that the court overlooked the same question in Gilhooly's case, for it is there said in substance that the question had not been passed upon. So also in the decision rendered in the *People ex rel. Fallon,* in October, 1882, the intermediate decision of the *People ex rel. Mohr,* which had not then been reported, was not considered. This arose, perhaps, from the fact that the justice who wrote the opinion in the Fallon case was not present at the argument and did not participate in the decision of the Mohr case. The result is that the court has decided the same question twice, to

PEOPLE ex rel. FALLON v. POLICE COM'RS.    211

First Department, December Term, 1883.

wit : in the Gilhooly and the Fallon cases in one way, and once, in the Mohr case, in another way, the decisions being in direct conflict. There can be no question but that if the attention of the court in the Mohr case had been called to the previous decision of the Gilhooly case, it would undoubtedly have followed that decision, leaving the error, if one was committed in that case, to be corrected by the court of last resort. Under these circumstances a reargument was ordered in the last two cases for the purpose of producing uniformity of decision and enabling the question in the cases, if the parties shall be so advised, to be finally disposed of by the Court of Appeals.

The principal question in the cases was simply whether, upon the investigation of charges against a police officer for improper conduct, where the testimony has been taken by a stenographer before one member of such board, and by him reported to the board for its action, the subsequent termination of the office of the commissioner who took the testimony deprives the board of jurisdiction to proceed to hear and decide the case ; or, in other words, whether it is necessary, where testimony has been taken before one commissioner, that he should continue in office and participate in its final consideration, to render the action of the board legal.

It has in several cases been decided by this court that the taking of such testimony before one commissioner is a procedure authorized by the rules of the board and by the statute. But that question is now finally settled by the decision of the Court of Appeals in the *People ex rel. Flannagan* v. *The Board of Police Commissioners* (93 N. Y., 97), in which the decision of this court on that question is affirmed. In that case the Court of Appeals held that in the disposition of such cases by the commissioners the rights of the relator were governed and controlled by statutory provisions, and the rules and regulations of the police department made in pursuance thereof, and that the commissioners " in the exercise of their functions, are, to some extent, vested with a discretionary power which authorizes them, within established rules, to take action without restricting their proceedings to strict technical rules. They are a subordinate and an administrative tribunal vested with disciplinary powers, and not a court limited in its functions within the provisions of the Constitution. (See State Const., art. 1, § 6.) Their action

212 PEOPLE ex rel. FALLON v. POLICE COM'RS.

FIRST DEPARTMENT, DECEMBER TERM, 1883.

must be considered, having in view the special powers conferred, and the purposes for which their organization was intended, and not confined by the application of strict legal rules, which prevail in reference to trials and proceedings in courts of law."

And again, in the course of its opinion the court says: "As the board of commissioners do not constitute a court, its proceedings should not be controlled or decided by the same degree of formality that would be required upon a charge of a criminal offense before ordinary tribunals of justice." And in considering the rules of the board which permitted the testimony to be taken before one commissioner the court proceeds to say: "This rule contemplates that the accused may be taken before one of the commissioners and examined, and that the testimony shall be laid before and examined by the several commissioners before judgment thereon. We think that the rule was fully authorized under section 41 of chapter 335 of the Laws of 1873, and was not in conflict with the provisions of section 55 of the same act. Nor are we able to see that the rule referred to was not fully complied with; the board met and acted together, and a conviction was had before it as a united body after full examination and due deliberation. It was not essential that a majority of the board should be present upon the taking of the testimony. The statute, by clothing them with power, under their own by-laws, intended to relieve the board from the necessity of all or a majority of its members being present when testimony, in a case like this, was being taken."

The Flannagan case does not decide the precise point presented in this case, but it establishes rules from which we think it must necessarily follow that the board of commissioners is not ousted of jurisdiction, where testimony is taken by one of their number for the purpose of being laid before the whole board for its examination and decision, by the accident of his death or the intermediate determination of his office. His duties in taking the testimony are administrative and clerical in their nature, for he has no power to do anything more than to hear and take down the evidence in the case as offered by the complainant and the respondent, and transmit the same to the board itself for its examination and decision.

In this regard the proceeding is analogous to that which often takes place in the trial of special proceedings in courts where the

testimony is taken before or under the direction of a judge or referee, and the case is brought to a hearing upon such testimony before some other judge or tribunal. To hold that the proceedings already had are defeated by death, or the termination of an office in such a case, would go beyond any rule laid down for the conduct of strictly judicial proceedings. It certainly would be going much too far to say that such an accident, in the progress of proceedings administrative rather than judicial, would of necessity defeat all further steps. The cases before us illustrate how wholly unreasonable such a rule would be. Here the testimony was taken before a single commissioner by a stenographer in the form of question and answer, everything being taken down precisely as said by the witnesses or by the commissioner. In reading it over, both on this return and by the board of commissioners on the hearing, all that transpired is completely before us, as it was before them, and the presence of the commissioner before whom it was taken could neither add nor detract from its significance. On its examination by the board, the relator had the right to be present if he wished, and to be heard ; and, as we have lately decided in the case of the *People ex rel. Swift* v. *The Police Commissioners* (MS. opinion DAVIS, P. J.),* the board may proceed to take additional testimony and accord to the accused a further opportunity to answer and explain the charge. In that case the testimony was in part taken before one commissioner. It was laid before a meeting of the board, three commissioners being present, and the relator was again called up for further explanation and re-examination by such board. This court held that a meeting of three commissioners constituted a legal board, with full power to act in such cases, and that the testimony taken before a single commissioner could be laid before the several commissioners sitting to try the case.

In Gilhooly's case, above referred to, where the question now under consideration was directly presented, it was decided that the statute intended to relieve the board from the necessity of a majority of its members being present by clothing them with power to make any by-laws to regulate the mode of taking testimony in such cases ; and that the testimony having been taken lawfully and

---

* Reported *ante,* p. 40.

properly, it does not follow that the proceedings must fail, because there happened to be a change in the incumbent of the office of the commissioner who wrote the testimony.

The recitals of the orders in these cases show, as they did in that, that the board publicly heard the proofs and allegations in support of the charges ; that the relator appeared, and that a full opportunity to be heard in his defense having been afforded him and due deliberation being thereupon had, it was found that he was guilty of the charges made against him ; whereupon it was ordered by the board that he be removed. The orders show that the final hearing and proceedings upon testimony regularly taken was had by and before the board as required by law, composed of all four of the then existing commissioners. It is impossible we think to suggest that the relator suffered any injury by reason of the fact that the commissioner who performed the clerical duty of taking the testimony was not present. Much evil might result in the administration of the disciplinary powers of the board, if it were necessary to go through the formality of retaking the evidence in every case upon charges made, because the commissioner before whom it was taken should by some accident cease to be a member of the board.

We think the court would have so held in the *People ex rel. Mohr* v. *The Commissioners,* if its attention had been called to the previous decision of this court, and while that decision stands unreversed, it ought to be deemed the conclusive judgment of this court.

A judgment of reversal should therefore be ordered in the Mohr case ; and so far as this question is concerned the same rule of law applies to the Fallon case.

The question as to the right of the relator in that case to have counsel before the commissioners, was one addressed to the discretion of that body. It was held in the case of the *People ex rel. Farrell* v. *The Board of Commissioners* (20 Hun, 402), that the provisions (section 6 of article 1) of the Constitution have no application to the proceedings and judgment in proceedings against members of the police force, for violation of the rules of the discipline of the force. The offense charged was not a violation of the law of the State, or such as is or can be tried in a court of justice ; it was a mere rule for the government and discipline of the police force.

(*People ex rel. Farrell* v. *Board of Police*, 20 Hun, 402; see, also, *People ex rel. Thatcher* v. *N. Y. Com. Asso.*, 18 Abb., 271, 285.)

And the Court of Appeals in the case above cited have affirmed this doctrine. (See *Matter of Flannagan*, above cited.)

A similar provision under the former State Constitution was held not to be applicable to a hearing before a county medical society while exercising its power of amotion. (See Dillon on Municipal Corporations, § 179.) The power of amotion in this class of cases is conferred by statute. It authorizes the commissioner to regulate their proceedings by rules, and when such rules are made in accordance with the statute, the court cannot interfere with their decisions, even though it may be of opinion that better rules might be devised.

The result is that the orders of the Special Term should be reversed, with ten dollars costs in each case, and the writs dismissed.

DANIELS, J.:

I agree to the result in order that the controverted point on which the cases depend may be placed in a condition in which it can · be presented to the Court of Appeals.

BRADY, J.:

I also agree to the result for the reason assigned by DANIELS, J., but I do not admit that the question in the Mohr case is the same as that considered in the Gilhooly case.

Orders reversed in each case, with ten dollars costs and disbursements, and writs dismissed.